**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JOSÉ HERNANDEZ,                        ) | |
|                                        ) | |
|              Plaintiff,                ) | |
|                                        ) | |
| v.                                     ) | |
|                                        ) | Case No. 3:17-cv-01335-NJR |
| ILLINOIS DEPARTMENT OF                 ) | |
| CORRECTIONS, et al.,                   ) | |
|                                        ) | |
|              Defendants.               ) | |

---

**PLAINTIFF'S MOTION TO COMPEL RENEWED RULE 30(B)(6)
DEPOSITIONS OF DEFENDANTS IDOC AND WEXFORD AND FOR
OTHER MISCELLANEOUS RELIEF AGAINST DEFENDANT IDOC**

Two days before the February 28, 2020, close of fact discovery, Defendant Illinois

Department of Corrections ("IDOC") produced ***3,644 pages of new documents*** to Plaintiff in

response to requests for production that Plaintiff had served nine months earlier. IDOC

unjustifiably waited to produce this trove of documents until the last week of discovery, after

Plaintiff already had deposed IDOC's corporate representative and its defendant employees, and

one day before Plaintiff was scheduled to depose the corporate representative for Defendant

Wexford Health Sources, Inc. ("Wexford"). From these documents, Plaintiff learned the

following: (1) that the prior corporate testimony of Defendants IDOC and Wexford on issues

central to this case was false or incomplete, whether intentionally so or as a result of the

witnesses' failure to prepare; and (2) that IDOC falsely represented that it was redacting "health

and personal information of other inmates," when in fact it improperly redacted from its

production potentially harmful and embarrassing information, including a statement in an email

sent by IDOC Defendant Lorie Cunningham referring to inmates in the infirmary wing as

"***dogs***." Plaintiff has been prejudiced by this untimely production.

On March 4, 2020, Plaintiff requested (1) that Defendants IDOC and Wexford agree to seek a limited discovery extension to continue the depositions of their Rule 30(b)(6) representatives in order to clarify their testimony on the topics illuminated by these missing documents; (2) that IDOC pay the reasonable costs and expenses of Plaintiff's pro bono counsel in taking those continued depositions; and (3) that IDOC provide a log explaining the basis for each of its redactions. Defendants have refused each of Plaintiff's requests. Plaintiff, therefore, moves this Court pursuant to Rules 16, 34, and 37 of the Federal Rules of Civil Procedure for the above-requested relief, along with the reasonable costs and expenses of bringing this motion and any other relief the court deems fair.

## BACKGROUND

Plaintiff issued requests for production pursuant to Rule 34 to Defendant IDOC on May 31, 2019. IDOC sent its written responses to those requests by email on August 16, 2019. (Ex. 01, Aug. 16, 2019 Email from S. Lukes; Ex. 02, IDOC's Resp. to Pl.'s 1st Set of RFPs, Aug. 16, 2019.) In the body of the email, Stacy Lukes, a Legal Secretary for the Illinois Attorney General's Office, represented that she would be sending by U.S. Mail a CD with documents labeled Bates Nos. 001291–001401 and 001412–001472. (Ex. 01.) Plaintiff's counsel received the CD with those Bates ranges on August 20, 2019.

On September 4, 2019, Plaintiff's counsel sent a letter to IDOC's counsel identifying numerous deficiencies in IDOC's discovery responses and asking IDOC to supplement its responses and production. (Ex. 03, Sept. 4, 2019, Ltr. from S. Catalano.) Plaintiff's counsel pointed out that IDOC's written discovery responses refer to documents with Bates Nos. 1285–1290, but that those documents were not included in the production sent on August 16, 2019. (*Id.*

2

at 8.) Plaintiff requested that IDOC supplement its production to include the missing documents. (*Id.*)

On September 11, 2019, Plaintiff's counsel and IDOC's counsel met and conferred about the discovery deficiencies. IDOC's counsel explained that IDOC was conducting an electronic search of emails of the three named IDOC defendants, limiting the search to those documents which hit on *all* of the following search terms: "Hernandez" *and* "Jose" *and* "M01795" (Plaintiff's inmate number). (Ex. 04, Sept. 12, 2019, Ltr. from S. Catalano, at 2.) On September 26, 2019, IDOC produced 41 pages of documents from that email search, which IDOC labeled Bates Nos. 1520–1561.[1] (Ex. 05, Sept. 26, 2019, Ltr. from R. Schwarzlose.) IDOC's counsel explained that IDOC would be producing more documents from the email search after redacting "protected health information of other inmates." (*Id.*)

On October 3, 2019, in order to resolve numerous deficiencies in IDOC's discovery responses identified by Plaintiff, IDOC agreed to conduct a second email search, expanding the custodians and search terms. (Ex. 06, Oct. 4, 2019, Ltr. from S. Catalano, at 1.) The parties agreed to seek an extension of the November 29, 2019, fact discovery deadline "to allow time for IDOC to produce the documents before [Plaintiff's lawyers] depose the IDOC defendants." (Ex. 07, Oct. 22, 2019, Email from S. Catalano.) The Court granted an extension through February 27, 2020. (Docs. 101, 102.)

On October 28, 2019, IDOC's counsel informed Plaintiff's counsel that she had received the results of the second email search and that she needed time to "review the materials for potential redaction." (Ex. 08, Oct. 28, 2019, Email Chain Between S. Catalano and

---

[1] As a result of the meet and confer process, IDOC also produced supplemental documents that were not part of the email search on September 26, 2019, and October 16, 2019, which IDOC labeled Bates Nos. 1483–1519 and Bates Nos. 3096–3207.

R. Schwarzlose, at 2.) Plaintiff's counsel requested that IDOC produce the documents before the deposition of the first Defendant, Wexford doctor John Coe, scheduled on December 16, 2019, nearly two months after IDOC completed the email search. (Ex. 09, Dec. 19, 2019, Email Chain Between S. Catalano and R. Schwarzlose, at 2.) On December 6, 2019, IDOC's counsel informed Plaintiff's counsel that she would "not be able to produce the remainder of the emails by Monday, December 9," before Dr. Coe's deposition on December 16, 2019, but that she would "forward them as soon as I can." (*Id.* at 1.) Ten days later, on December 19, 2019, Plaintiff's counsel asked IDOC to confirm when IDOC would be producing the documents, explaining that "[w]e need these documents to move forward with the rest of the depositions in this case." (*Id.*) IDOC's counsel did not respond to that email.

On January 8, 2020, IDOC sent by email a production with 1,415 pages of documents labeled "ESI." (Ex. 10, Jan. 8, 2020, Email from S. Lukes.) IDOC labeled these documents with Bates Nos. 1562–2976. IDOC served with the production its Fifth Supplemental Response to Plaintiff's First Request for Production of Documents, in which it provided supplemental answers to Request Nos. 7 and 10 stating the following: "Defendants refer Plaintiff to additional emails, Bates Stamped numbers 001562–002976, which have been redacted to protect the health or other private information of other inmates." (Ex. 11, IDOC's 5th Supp. Resp. to Pl.'s 1st Set of RFPs, at 5, 7.)

Plaintiff reasonably understood this January 8 production to contain the emails that IDOC's counsel had been promising to produce since October 3, 2019. IDOC's counsel was aware that Plaintiff was waiting for IDOC's document production to proceed with the depositions of Defendants. With that understanding, Plaintiff took the depositions of IDOC's Rule 30(b)(6) corporate representative and the three individual IDOC Defendants on February 4

4

and 18, 2020. Plaintiff took the deposition of Wexford's Rule 30(b)(6) corporate representatives on February 18 and 27, 2020, and the second Wexford Defendant on February 28, 2020.

On February 14, 2019, Plaintiff reissued the Rule 30(b)(6) notice of deposition to IDOC to present a witness on five of the originally noticed topics for which IDOC's corporate representative was not presented to testify on February 4, 2020. (Ex. 12, Feb. 24, 2020, Email Chain Between S. Catalano & R. Schwarzlose, at 9; *see* Doc. 117-3, Dep. Tr. L. Cunningham, Feb. 4, 2020, 87:2-10 ("Ms. Schwarzlose: . . . Ms. Cunningham is not being presented as the 30(b)(6) witness from IDOC for any of the topics, Nos. 9 through 13.").) The five Topics Nos. 9–13 relate to IDOC's document production, including IDOC's efforts to search for documents responsive to Plaintiff's requests for production and document retention and organization policies. (Ex. 13, Feb. 14, 2020, Pl.'s Renewed Am. Notice of Dep. to IDOC, at 4.) IDOC objected to the topics. (Ex. 12, Feb. 24, 2020, Email Chain, at 8–9.)

On February 20, 2020, Plaintiff's counsel met and conferred with IDOC's counsel about the renewed deposition notice. Plaintiff's counsel explained that there were two categories of documents referenced by IDOC Defendants during their depositions that IDOC had not produced: inspection reports from the Lawrence infirmary wing and the ADA's Coordinator's file from Lawrence. (*Id.* at 7–8.) IDOC's counsel represented on the call that the inspection reports had already been produced at Bates Nos. 1179–1217 and 1218–1265, but acknowledged that IDOC had used duplicative Bates numbers for documents produced in Bates range 0001–1274. (*Id.* at 4–5.) IDOC's counsel further represented that IDOC had found no ADA Coordinator files. (*Id.* at 4.) Based on IDOC's representations, Plaintiff agreed during the call to withdraw the reissued deposition notice.

On February 21, 2020, Plaintiff's counsel confirmed that IDOC never produced to Plaintiff documents with Bates numbers 00001–01290, including the inspection reports at Bates Nos. 1179–1217 and 1218–1265. (*Id.* at 2–3.) IDOC *had* produced to Defendant Wexford Plaintiff's medical record, which Wexford then produced to Plaintiff. The medical record is labeled with Bates range "Hernandez-LCC (MR) 00001–01274." Plaintiff's counsel requested that IDOC immediately produce any documents missing from the production. (*Id.* at 1.)

Five days later—two days before the close of fact discovery—on February 26, 2020, Plaintiff received a CD from IDOC containing 3,644 pages of documents that had not previously been produced. In a letter accompanying the production, IDOC's counsel represented that 1,308 of the pages were documents that IDOC had intended to produce in August 2019. (Ex. 14, Feb. 25, 2020, Ltr. from R. Schwarzlose.) Those documents were labeled with Bates Nos. 000001–001290, 001402–001411, and 001473–001482. (*Id.*) The other 2,336 pages labeled with Bates Nos. 003236–005568 contain additional documents from the email searches that IDOC had never produced. (*Id.*) IDOC explained that these pages were "redacted to protect the health and personal information of other inmates." (*Id.*)

As described more fully below, the newly produced documents suggest that the Rule 30(b)(6) representatives for IDOC and Wexford did not give truthful or complete testimony, either intentionally so or as a result of the witnesses' failure to prepare. Moreover, the documents reveal that IDOC has been redacting potentially embarrassing information that does not contain "health and personal information of other inmates," including a statement in an email sent by a named IDOC Individual Defendant referring to inmates in the infirmary wing as "dogs."

On March 4, 2020, Plaintiff's counsel reached out to IDOC's and Wexford's counsel to request that they agree (1) to seek a limited discovery extension to continue the depositions of

their Rule 30(b)(6) representatives in order to clarify their testimony on the topics illuminated by these newly-produced documents; (2) that IDOC pay the reasonable costs and expenses of Plaintiff's pro bono counsel in taking those continued depositions; and (3) that IDOC provide a log explaining the basis for each of its redactions. (Ex. 15, Mar. 6, 2020, Email Chain between S. Catalano & R. Schwarzlose, at 2–4.)

On March 6, 2020, IDOC responded by rejecting each of Plaintiff's requests and instead offering that IDOC would consider "specific interrogatory questions Plaintiff's counsel proposes as a result of their review of the records" and then IDOC would "determine whether objections are appropriate." (*Id.* at 1–2.) As for the redactions, IDOC responded that it "[g]enerally . . . redacted any information regarding other inmates or contained information that was not relevant or responsive to plaintiff's request," and offered that "[i]f there is a particular page for which Plaintiff has questions about the redaction, we will try to identify what was specifically redacted." (*Id.*) Wexford also responded on March 6, 2020, requesting a list of the relevant Bates numbers from IDOC's February 26, 2020, production, which Plaintiff promptly provided. (Ex. 16, Mar. 6, 2020, Email Chain between S. Catalano & D. Harms, at 1–3.)

On March 9, 2020, Plaintiff's counsel met and conferred by phone with IDOC's and Wexford's counsel. Plaintiff's counsel explained that interrogatory questions are not a sufficient substitute for reopening the Rule 30(b)(6) depositions (particularly where IDOC contemplates objecting to the questions), and that Plaintiff would not agree to shift the burden to Plaintiff to identify redactions that might include inculpatory information that IDOC had improperly redacted. Counsel for IDOC and Wexford maintain that they will not agree to any of Plaintiff's requests.

## LEGAL STANDARD

Rule 34 clearly states that a party must respond to requests to produce within 30 days after being served. Fed. R. Civ. P. 34(b)(2)(A). Under Federal Rule of Civil Procedure 37(a)(1), a party may seek an order to compel discovery from a party that has failed to comply with the federal procedural rules. District courts enjoy broad discretion when considering motions to compel, *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646 (7th Cir.2001), and have "consistently adopted a liberal interpretation of the discovery rules." *See, e.g.*, *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006) (quoting *Wilstein v. San Tropai Condominium Master Assoc.*, 189 F.R.D. 371, 375 (N.D. Ill. 1999)). The burden rests upon the objecting party to show why a discovery request is improper. *Kodish v. Oakbrook Terrace Fire Prot. Dist.,* 235 F.R.D. 447, 449–50 (N.D. Ill. 2006) (citation omitted); *Rubin v. Islamic Republic of Iran*, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004).

The Court has broad discretion to extend discovery. *Lapsley v. Fries*, No. 1:11-CV-99, 2012 WL 2721909, at *2 (N.D. Ind. July 9, 2012). Under Rule 16(b), a schedule may be modified "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). For requests such as Plaintiff's, the determination is "an equitable one, taking account of all relevant circumstances," such as "the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

Fed. R. Civ. P. 37(a)(5)(A) allows the Court to award costs to party who prevails on a motion to compel. *See Bilek v. Am. Home Mortg. Servicing*, No. 07–CV–4147 (AJS), 2010 WL 3306912, at *1-2 (N.D. Ill. Aug. 19, 2010) (affirming grant of attorney's fees for cost of

motion to compel); *Rickels v. City of S. Bend, Ind.*, 33 F.3d 785, 786 ("The great operative principle of Rule 37(a)(4) is that the loser pays.") (quoting Wright & Miller, *8 Federal Practice and Procedure*, § 2288, at 787 (1970)).

**ANALYSIS**

**I.     IDOC'S UNTIMELY PRODUCTION REVEALS THAT TESTIMONY OF IDOC AND WEXFORD'S RULE 30(B)(6) REPRESENTATIVES WAS NOT COMPLETE**

> **A.     The Testimony of IDOC's Rule 30(b)(6) Representative Was Incomplete**

The untimely produced documents that Plaintiff received from IDOC on February 26, 2020, demonstrated that portions of IDOC's Rule 30(b)(6) testimony was, at worst, false or misleading, and, at best, incomplete. IDOC's Rule 30(b)(6) representative, Defendant Cunningham, was asked whether infirmary patients ever complained that nursing staff was not responding to call button alerts. Ms. Cunningham answered with an unambiguous "No." (Doc. 117-3, Cunningham Dep. Tr. 146:17-20.)

After reviewing IDOC's new production, Plaintiff discovered that IDOC's testimony was highly misleading, if not false. In an infirmary inspection report from November 16, 2014, an assistant warden, Defendant Assistant Warden Beth Tredway, wrote, "This writer spoke with offenders placed in A ward in Infirmary due to them reporting issues with a certain nurse on midnights failing to reposition them to avoid skin breakdowns, and responding to PB light promptly. This writer plans to follow up again with Healthcare Unit and DON regarding staffing levels, and their job expectations in ensuring their medical needs are being met." (Ex. 17, Excerpts from Docs. Produced by IDOC on Feb. 26, 2020, at Bates No. 001210-11.) Presumably, "PB light" refers to the call button light. At the heart of this case is whether IDOC failed to provide Mr. Hernandez with ADA accommodations, namely a reasonably comfortable

9

and safe place to sleep where his calls for help are responded to and he is not in danger of developing pressure wounds ("skin breakdowns"). Plaintiff should be able to question IDOC about these complaints and IDOC's response to those complaints.

A number of other documents that IDOC produced two days before discovery fit squarely within the noticed topics for IDOC's Rule 30(b)(6) deposition and Plaintiff should have been able to question its representative. Deposition topics included:

- IDOC's responses to requests for accommodations made by Plaintiff or any other inmate housed in the infirmary wing at Lawrence CC from July 1, 2014 to July 31, 2016 related to special mattresses.

- IDOC's or Wexford's purchase, distribution, and repair or attempted repair of special mattresses (including alternating air mattresses) for disabled inmates.

- IDOC's role in evaluating and responding to requests for accommodations from disabled inmates, including IDOC's role in evaluating and responding to requests for special mattresses.

- IDOC's role in evaluating and responding to requests for accommodations from disabled inmates, including IDOC's role in evaluating and responding to requests for special mattresses.

(Ex. 13, Feb. 14, 2020, Pl.'s Renewed Am. Notice of Dep. to IDOC, at 3–4.)

IDOC's new production included a number of emails that demonstrate that the Lawrence infirmary was experiencing ongoing problems with medical air mattresses. Several emails discuss mattresses breaking that have to be replaced. (Ex. 17, at Bates Nos. 003465–66, 003529–31, 003580–83, 003643, 003670–71, 003687–89, 003749–51, 005394, 005398, 005435–37.) When asked about the typical lifespan of an alternating air mattress, IDOC testified that "many factors" were relevant, but because the representative had not reviewed the manufacturer's manual, she could not say. (Doc. 117-3, Cunningham Dep. Tr. 123:12-25.) These emails, most of which include Ms. Cunningham (who was Wexford's Director of Nursing at the time), demonstrate that there was a pattern at Lawrence of medical air mattresses breaking and being

10

replaced. Four email chains detail circumstances under which an infirmary patient did not receive a mattress. (Ex. 17, at Bates Nos. 003655–56, 003689, 003720–21, 005377–79.) In one case, an infirmary patient went without a medically necessary air mattress for an entire month. (*Id.* at Bates Nos. 005377–79.) In another, an air mattress was supposed to have been ordered in May, but the patient still had not received it by August. (*Id.* at Bates No. 003689.)

Several emails also contradict the IDOC representative's testimony about how air mattresses were ordered. Ms. Cunningham stated that if a physician determined that there is "a medical need for a mattress," then the mattress is ordered from a vendor company, "usually always McKesson." (Doc. 117-3, Cunningham Dep. Tr. 118:8-16.) IDOC was also asked whether it considers cost when determining whether to provide an accommodation, such as air mattresses. Ms. Cunningham stated that she has "not seen—that." (*Id.* at 122:14-20.) By contrast, emails that IDOC produced show Ms. Cunningham herself, when she was a Wexford employee, ordering $16.50 camping air mattresses from Amazon for infirmary patients. (Ex. 17, at Bates Nos. 003545–49, 003580–83, 003665, 005389–90.) Did IDOC know infirmary patients were receiving air mattresses from Amazon? How long did this go on? Were wardens touring the infirmary ignoring patients' complaints about their camping mattresses?

Particularly under the circumstances here, in which the IDOC representative had reviewed no documents other than the deposition notice and written discovery responses, talked to no IDOC employees, was unable to access medical records that *her own counsel produced*, and stated that she believed she was only "going to be discussing ADs and IDs of care for the Illinois Department of Corrections," every document is critical to ensure that testimony is complete and correct. (Doc. 117-3, Cunningham Dep. Tr. 165:11-14.) Plaintiff should have had

access to these documents prior to IDOC's deposition and should have been able to question its representative about their contents.

IDOC's offer to allow Plaintiff to serve additional interrogatories is not sufficient to remedy the prejudice that has been done to Plaintiff by withholding the documents until after IDOC's Rule 30(b)(6) deposition. Any interrogatory response from IDOC likely will be subject to the numerous boilerplate objections that IDOC provided to Plaintiff's first set of interrogatories. (*See generally*, Ex. 18, Aug. 16, 2019, IDOC's Objs. to Pl.'s 1st Set of Interrogs.) Plaintiff deserves to question IDOC about these documents without the limitations of a set number of interrogatories. Moreover, given IDOC's prejudicial tactics and improper redactions, Plaintiff also should be permitted to question IDOC's Rule 30(b)(6) representative about the previously noticed Topics 9 through 13. (Ex. 13, Pl.'s Renewed Am. Notice of Dep. to IDOC, at 4.)

### B.   The Testimony of Wexford's Rule 30(b)(6) Representative Was Incomplete

IDOC produced a number of documents germane to the topics noticed for Wexford's Rule 30(b)(6) deposition—topics for which the Wexford representative had not adequately prepared. Plaintiff properly noticed the following topics, among others, for Wexford's Rule 30(b)(6) deposition:

- The role of Wexford employees in evaluating quadriplegic or paralyzed inmates in the custody of IDOC.

- Wexford's responses to requests for accommodations made by Plaintiff or any other inmate housed in the infirmary wing at Lawrence CC from July 1, 2014 to July 31, 2016, related to special mattresses.

- Wexford's policies and procedures relating to requests for accommodations from disabled inmates.

- The circumstances pursuant to which Wexford employees are or were authorized to respond to requests for accommodations made by Plaintiff or

any other inmate housed in the infirmary wing at Lawrence related to special mattresses.

- Wexford's policies and procedures relating to the medical treatment and nursing care of quadriplegic or paralyzed inmates since January 1, 2014, including those relating to. . . . mattresses provided to quadriplegic or paralyzed inmates. . . . decisions about whether to grant or deny a request for medical care.

- Wexford's purchase, distribution, and repair or attempted repair of special mattresses (including alternating air mattresses) for disabled inmates.

(Ex. 19, Pl.'s 2d Am. Notice of Dep. to Wexford, at 3–4.)

On February 27, 2020, Wexford's representative testified that he did not know Wexford's policy about repairing or replacing medical air mattresses. He knew that the Utilization Management team from Wexford corporate usually followed up on the completion of medical device orders, but he was not aware of the Utilization Management team's processes. He did not know who would decide whether an air mattress should be replaced. He did not know anything about Wexford's Purchasing Department and how they go about buying air mattresses.[2]

Emails produced by IDOC illuminate Wexford's ordering process for air mattresses. First, Plaintiff has learned that Wexford employees, including Defendant Cunningham, were aware of multiple instances in which air mattresses ruptured, indicating that leaking air mattresses was an ongoing problem. (Ex. 17, at Bates Nos. 003465–66, 003529–31, 003580–83, 003643, 003670–71, 003687–89, 003749–51, 005394, 005398, 005435–37.) Plaintiff should be able to ask a prepared Wexford representative what the process is for replacing air mattresses. IDOC's production also reveals that there were *at least* two instances where delivery of a patient's air mattress was substantially delayed. In one case, a bedridden patient with an advanced pressure ulcer waited at least a month for his medically prescribed air mattress

---

[2] The transcript from this deposition is not yet available.

"because someone at Wexford didn't do anything with the NAN form they got on the 2nd." (*Id.* at Bates Nos. 005377–79). The order for an air mattress was rejected a month after it was relayed to Utilization Management because it was not sent to the appropriate person. (*Id.* at 005377–79.) How often does this occur?

Second, Wexford's Utilization Management team sent a strongly worded email that said Wexford would not be ordering an inmate another medical air mattress if his new one tore. Rebecca Adams, a Wexford employee on the Utilization Review team, wrote the following when she approved an air mattress order:

> The site reported that it is leaking along the seam. I told Dr. Garcia that this patient just had one issued in March .. [*sic*] We are going to order a new one but we instructed Dr. Coe @ Lawrence to instruct this patient on the care of his [Durable Medical Equipment] and that we will not be ordering him another one anytime soon...

(*Id.* at Bates No. 005397). It is significant that Wexford is directing Lawrence infirmary employees, including Defendant Dr. Coe, that it will not order a replacement medical device if one is broken. There is clearly a point at which Wexford will no longer provide medical equipment to infirmary patients, and Plaintiff should be able to question Wexford to that effect.

Finally, as IDOC incorrectly testified, Wexford asserted that, when ordering medical devices, cost is only considered if there's a cheaper device that does the same thing. Had they been available, Plaintiff would have questioned Wexford why Wexford employees were ordering cheap camping air mattresses from Amazon instead of medical air mattresses. (*Id.* at Bates Nos. 003545–49, 003580–83, 003665, 005389–90.) Plaintiff should be able to ask Wexford questions to this effect.

During the meet and confer call on March 9, 2020, Wexford refused Plaintiff's request to continue the deposition of its Rule 30(b)(6) representative on the ground that the documents

Plaintiff identified relate to other inmates, not Mr. Hernandez.  But the documents fall squarely within the noticed deposition topics, to which Wexford did not object or for which this Court already denied Wexford's motion for protective order. (Doc. 118.)

## II.   IDOC'S UNTIMELY PRODUCTION DEMONSTRATES THAT IDOC HAS BEEN IMPROPERLY REDACTING DOCUMENTS

In the trove of documents produced by IDOC on February 26, 2020, Plaintiff's counsel found evidence that IDOC has improperly redacted embarrassing emails between IDOC and Wexford employees. On January 8, 2020, IDOC produced an email between Defendant Lorie Cunningham and Defendant Jon Allender dated March 9, 2016. (Ex. 20, Excerpts from Docs. Produced by IDOC on Jan. 8, 2020, at Bates Nos. 002947–48.) The email referred to inmates' complaints. While most of the email is redacted, several of Mr. Hernandez's complaints were visible, including one in which he asked that infirmary patients not be woken up at 1:30 a.m. to have their vital signs read. On the second page of the email, just prior to Defendant Cunningham's email signature, is evidence that an IDOC employee believes that inmates are treated *like dogs*. Defendant Cunningham writes, "Why because waking up inmates at 130 in the morning like dogs isn't going to work anymore." (*Id.*)

In each of the versions of this email produced by IDOC on February 26, 2020, the line "Why because waking up inmates at 130 in the morning like dogs isn't going to work anymore" ***has been redacted.*** (Ex. 17, at Bates Nos. 003599–600, 003727–28, 003729–30.) In the letter accompanying IDOC's production, IDOC's counsel represented to Plaintiff's counsel that IDOC was redacting its production solely to "*protect the health and personal information of other inmates.*" (Ex. 14, Feb. 25, 2020, Ltr. from R. Schwarzlose (emphasis added).) This sentence referring to IDOC inmates as dogs has <u>nothing</u> to do with the health or personal information of

other inmates. Instead, IDOC could only have redacted this line because it embarrassed the IDOC Defendants.

Additionally, IDOC was, at a minimum, careless in redacting relevant documents that refer directly to Plaintiff. Plaintiff discovered another email chain that was improperly redacted based on a version he received in an earlier production. (*Compare* Ex. 21, Excerpts from Docs. Produced by IDOC on Sept. 26, 2019, at Bates Nos. 001528–29, *with* Ex. 17, at Bates Nos. 003385–86.) This email chain deals with a concern Mr. Hernandez's brother brought to the prison's attention related to nurses behaving inappropriately and failing to regularly turn Mr. Hernandez. (*Id*.) The improperly redacted portion involves a prison employee asking a Wexford employee, Defendant Cunningham, to investigate and report back with her findings. (Ex. 21, at Bates Nos. 001528–29.) It is unclear why IDOC redacted a portion of this email, as it has nothing to do with the health or personal information of other patients.

This effort to hide relevant information from Plaintiff under the guise of protecting the privacy of other inmates calls into question every redacted document that IDOC has produced in this case. Over the course of months of discovery, the vast majority of documents that IDOC has produced have been heavily redacted. Because of these unilateral redactions, Plaintiff has no way of knowing what other inculpatory information IDOC has hidden in literal black boxes. IDOC's suggestion that Plaintiff assume the burden of identifying potentially improper redactions is simply not feasible. In order to restore the integrity of this discovery process, IDOC should produce unredacted versions of all of the documents or produce a log explaining every redaction in IDOC's production.

## III.   PLAINTIFF COULD NOT HAVE REASONABLY ANTICIPATED IDOC'S UNTIMELY PRODUCTION

16

Of the 3,644 pages of documents that IDOC produced on February 26, 2020, IDOC contends that 1,308 of the pages were supposed to have been produced with IDOC's original production on August 16, 2019. There is no evidence that this is true and, in fact, IDOC's own documents suggest that it never previously intended to produce these documents. As for the other 2,336 pages, IDOC has provided no explanation for slipping in these new documents two days before the close of discovery, and there is no way Plaintiff could have predicted this last-minute data dump.

### A.   Documents Supposedly Produced in August 2019

IDOC now contends that it had intended to produce in August 2019 1,308 pages of documents with Bates Nos. 000001–001290, 001402–001411, and 001473–001482. But IDOC's own documents tell a different story. Ms. Lukes's email of August 16, 2019, stated that she would be sending a CD with documents labeled Bates Nos. 001291–001401 and 001412–001472. (Ex. 01, Aug. 16, 2019 Email from S. Lukes.) Notably missing from her email were the exact Bates ranges that IDOC now claims were supposed to have been produced: Bates Nos. 0000001–001290, 001402–001411, and 001473–001482.

Plaintiff could not have anticipated that IDOC was intending to produce other documents not named in Ms. Lukes's email *because IDOC used duplicative Bates numbers* to label its documents. IDOC previously had produced to Defendant Wexford Plaintiff's medical record, which Wexford then produced to Plaintiff on June 26, 2018. The medical record is labeled with Bates range "Hernandez-LCC (MR) 00001–01274." In IDOC's written response to Plaintiff's First Set of Requests for Production, IDOC refers to this prior production as "***the previously produced documents in this case***, Bates Numbers 000001–0001277" and "***the previously produced medical records produced in this case***, Bates Numbers 000021–001178." (Ex. 02,

IDOC's Resp. to Pl.'s 1st Set of RFPs, at 1, 5.) Both of those ranges overlap with the medical records previously produced in the case, first form IDOC to Wexford, then from Wexford to Plaintiff. By contrast, IDOC referred to the documents it was producing in August 2019 as "***the documents produced with this response***, Bates Numbers 001291–001411, 001412–001431." (*Id.* at 1.) None of IDOC's responses referred to documents with Bates Nos. 001473–001482.

Regardless whether IDOC intended to produce additional documents in August 2019, it did not in fact produce those documents until February 26, 2020, two days before the close of fact discovery after all Defendants had been deposed.

### B.   New Documents from the Email Search

IDOC does not even suggest that it ever intended to produce the remaining 2,336 pages of documents prior to the second-to-last day of fact discovery. This document production came as a complete surprise to Plaintiff. IDOC's counsel represented on October 28, 2019, that she had received the results of the second email search no later than October 25, 2019, and that she needed time to "review the materials for potential redaction." (Ex. 08 at 2, Oct. 28, 2019, Email Chain.) Six weeks later, on December 6, 2019, IDOC's counsel represented that she would "not be able to produce the remainder of the emails by Monday, December 9," as previously promised, but that she would "forward them as soon as I can." (Ex. 09, Dec. 19, 2019, Email Chain, at 1.) Having heard nothing further from IDOC's counsel ten days later, Plaintiff's counsel replied with the following on December 19, 2019: "Please let us know when you are going to produce the rest of the documents. It has been nearly two months since you told us that you received the documents and were reviewing them. We need these documents to move forward with the rest of the depositions in this case." (*Id.*)

IDOC's counsel did not respond to Plaintiff's counsel's email of December 19, 2019, but instead produced 1,415 pages of documents labeled "ESI" on January 8, 2020. There was nothing in IDOC's production or supplemental written responses served on January 8, 2020, that suggested IDOC was planning to produce any other documents. Having received this production, Plaintiff moved forward with scheduling the depositions of the Defendants. IDOC's counsel, who knew that Plaintiff was waiting for IDOC's production before moving forward with the depositions, did not inform Plaintiff's counsel that IDOC was planning to produce any other documents.

### C.    Documents IDOC Identified After the Close of Discovery That Have Not Been Produced

In an email on March 4, 2020, IDOC's Counsel stated that while she was preparing the February 26, 2020 production, she "noticed" that "there are additional institutional directives from Lawrence Correctional Center that have not yet been produced." (Ex. 15, Mar. 6, 2020, Email Chain, at 1.) Plaintiff requested these institutional directives in his First Set of Requests for Production to IDOC on May 31, 2019. Months later, IDOC did produce some IDOC policies and procedures. At no point did IDOC ever indicate that Plaintiff had received anything other than a complete set of administrative and institutional directives responsive to Plaintiff's requests for production. This email notifying Plaintiff of additional responsive directives was sent *five days* after the close of fact discovery on February 28, 2020. As of filing, these institutional directives <u>still</u> have not been produced.

## IV.    PLAINTIFF WAS PREJUDICED

By withholding relevant documents until the last possible moment and wrongfully redacting information, IDOC stymied Plaintiff's efforts to obtain relevant information from IDOC's and Wexford's Rule 30(b)(6) representatives. IDOC prevented Plaintiff from accessing

relevant documents that may have changed IDOC's and Wexford's testimony at their depositions, including emails from Wexford corporate employees denying inmates medical care and demonstrating a pattern of malfunctioning medical air mattresses and purchasing substandard replacements. Plaintiff has additionally been denied access to relevant IDOC policies and procedures *that Plaintiff still has not received*.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the entry of an order granting the following relief:

(1)  Reopen fact discovery for the limited purpose of allowing Plaintiff to continue the Rule 30(b)(6) depositions of Defendants IDOC and Wexford on or before March 27, 2020;

(2)  Extend the other dates in the current Scheduling Order as follows:

    a.  Plaintiff's expert disclosures due on April 20, 2020;

    b.  Plaintiff's expert deposition taken by May 20, 2020;

    c.  Defendants' expert disclosures due on June 19, 2020;

    d.  Defendants' expert depositions taken by July 20, 2020;

    e.  Discovery due by August 3, 2020;

    f.  *Daubert* and dispositive motions due by August 24, 2020;

(3)  Order IDOC to pay the reasonable costs and expenses for Plaintiff's counsel to take the continued Rule 30(b)(6) depositions of Defendants IDOC and Wexford;

(4)  Order IDOC to pay the reasonable costs and expenses incurred by Plaintiff in bringing this motion; and

(5)  Any other relief the Court deems fair under the circumstances.

DATED: March 10, 2020                    By:   *Scott C. Solberg*

Scott C. Solberg
Sarah H. Catalano
Eric L. Mackie (*pro hac vice*)
Emily Sullivan (*pro hac vice*)
EIMER STAHL LLP
224 S. Michigan Avenue, Suite 1100
Chicago, Illinois 60604
Tel. 312-660-7600
Fax: 312-692-1718
ssolberg@eimerstahl.com
scatalano@eimerstahl.com
emackie@eimerstahl.com
esullivan@eimerstahl.com

*Attorneys for Plaintiff José Hernandez*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 10th day of March 2020, I filed the foregoing document with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

Respectfully,

/s/       *Scott C. Solberg*