IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSE HERNANDEZ,<br><br>**Plaintiff,**<br><br>v.<br><br>ILLINOIS DEPARTMENT OF CORRECTIONS, *et al.*,<br><br>**Defendants.** | Case No. 17-cv-1335-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on Plaintiff Jose Hernandez's motion to compel renewed Rule 30(b)(6) depositions of Illinois Department of Corrections ("IDOC") and Wexford Health Sources, Inc. ("Wexford") (Doc. 121). Wexford (Doc. 128) and IDOC (Doc. 130) both filed responses to the motion, and Hernandez filed a reply (Doc. 131). The parties also have filed a joint motion to amend the scheduling order (Doc. 135). The Court held a telephonic hearing earlier today.

### BACKGROUND

In response to a request for production of documents, on August 20, 2019, Hernandez received a CD of documents containing Bates No. 1291-1401 and 1412-1472 (Doc. 121-1, p. 2). On September 4, 2019, Hernandez noted that the production was missing Bates Nos. 1285-1290 (Doc. 121-3, p. 9). The parties met and conferred about the deficiencies on September 11, 2019. Part of the discussion involved an electronic search of emails which produced an additional 41 pages of documents labeled Bates Nos. 1520-

1561 (Doc. 121-5). An additional email search revealed more documents, which on October 28, 2019, IDOC's counsel indicated would take time to review (Doc. 121-8). Although Hernandez requested that the production be made prior to Dr. Coe's deposition on December 16, 2019, that production did not occur (Doc. 121-9). On January 8, 2020, 1,415 pages of documents were produced—labeled Bates No. 1562-2976 (Doc. 121-10). IDOC noted that the documents were redacted to protect the health and private information of other inmates.

Hernandez believed that these documents—labeled "ESI"—included the emails previously promised. IDOC points out that additional emails were produced on February 3, 2020, which should have led Hernandez to believe that the production was not complete, but Hernandez states that he had informed IDOC he intended to wait until all productions were complete prior to the depositions and had moved the depositions already while waiting for additional documents. Hernandez proceeded with the deposition of IDOC's Rule 30(b)(6) corporate representative. Hernandez also took the deposition of Wexford's corporate representative in February 2020.

On February 14, 2019, Hernandez reissued his Rule 30(b)(6) deposition notice to IDOC because it had not produced a witness to testify on five of the originally noticed topics, including Topics 9-13 which related to IDOC's document production and retention policies (Doc. 121-12). During a meet and confer, Hernandez noted that he had never received inspection reports from Lawrence's infirmary wing or ADA Coordinator files from Lawrence (*Id.*). IDOC's counsel indicated inspection reports had been produced at Bates Nos. 1179-1217 and 1218-1265. There also were no ADA Coordinator files to

produce. The deposition notice was subsequently withdrawn.

Hernandez later discovered that he had not received the inspection reports as stated by IDOC's counsel and instead had received Wexford medical records labeled Bates Nos. 000001-1274 (Doc. 121-12). IDOC argues that its counsel referred to the medical records, produced by co-defendants and labeled Bates Nos. 000001-1178, as separate from believed to be produced documents Bates Nos. 000001-001277. Hernandez's counsel requested the documents be immediately produced, and two days before the close of discovery, on February 26, 2020, IDOC produced 3,664 pages of documents, including 1,308 documents that were supposed to be produced in August 2019 (Doc. 121-14). Additional documents were from the email searches that IDOC had never produced. IDOC argues that a number of the emails were duplicative of emails previously produced.

After the close of discovery, Hernandez's counsel learned that there were additional institutional directives that were not produced. Those directives were requested as part of Hernandez's First Set of Request for Productions sent May 30, 2019. Although some directives were produced as part of IDOC's response, IDOC never informed Hernandez that there were other directives that still needed to be produced. On March 6, 2020, IDOC produced a CD with all of the previously produced documents to include the institutional directives.

## DISCUSSION

Hernandez believes that the newly produced documents demonstrate that the corporate representatives for IDOC and Wexford did not give truthful or complete

testimony.

### A. IDOC Corporate Representative

As to IDOC, Hernandez argues that its representative, Defendant Cunningham, did not truthfully testify when she stated that infirmary patients did not complain about nursing staff responding to call button alerts (Doc. 117-3, p. 146). An infirmary inspection report from November 16, 2014 noted that offenders in Ward A reported issues with certain nurses failing to turn them properly and responding to PB light properly (Doc. 121-17, pp. 2-3). Hernandez points to a number of other documents that fall within the deposition topics. He argues that if he had those documents at the deposition, he could have questioned Cunningham on these topics (Doc. 121, p. 10). Some of those documents included emails about the purchase and life-span of air mattresses (*Id.* at pp. 10-11). The emails also included Cunningham, although at the time she was acting as Wexford's director of nursing (*Id.*).

IDOC first points out that the production on February 26, 2020 was not untimely as it was completed prior to the close of discovery and was just one of several supplemental productions made throughout the course of discovery. As to its corporate representative, IDOC argues that Hernandez has not shown that the lack of access to the emails regarding the purchasing of air mattresses requires an additional deposition. The emails provided did not include any information relevant to Hernandez's air mattress. The emails referred to generic air mattresses ordered from Amazon, while Hernandez's mattress was an "alternating air mattress" not from Amazon. Emails regarded the purchase of his air mattress were produced in September 2019. Further, the emails were

while Cunningham was a Wexford employee, not IDOC (Doc. 121, p. 11). Hernandez points out that he should be allowed to question IDOC about its role in ordering air mattresses for other inmates in the infirmary. He should also be able to question IDOC about its knowledge of ongoing issues with the call button and special air mattresses.

The Court does not find that the additional discovery warrants another deposition of IDOC's corporate representative. As IDOC points out, the additional documents are unrelated to the air mattress at issue in this case, and Cunningham testified that Wexford, and not IDOC, was in charge of ordering air mattresses for inmates. IDOC offered, in the alternative, to allow specific interrogatories about the additional documents. The Court finds this offer to be reasonable. Accordingly, the Court will allow Hernandez to submit up to **ten** additional interrogatories to IDOC's Rule 30(b)(6) representative. Hernandez is reminded that the interrogatories should be carefully tailored to the issues raised by the additional production of documents. IDOC shall have **fourteen** days from the receipt of the interrogatories to respond; boilerplate objections are unacceptable.

### B. Wexford's Corporate Representative

As to Wexford's representative, the Court also finds that any issues raised by the additional production of documents can be handled by not more than **ten** specific interrogatories directed at Wexford's representative. Again, Hernandez is reminded that the interrogatories should be specifically tailored to the issues raised by the additional production. Wexford shall also have **fourteen** days to respond. Again, boilerplate objections are unacceptable.

### C. Redactions

Hernandez also argues that produced documents were improperly redacted. Documents were reportedly redacted to remove medical information of other inmates. An email dated March 9, 2016 between Lorie Cunningham and Jon Allender included a number of complaints from other inmates that were redacted. Hernandez's complaints were not redacted, including a complaint requesting that inmates not be woken up at 1:30 a.m. for vitals; Cunningham's response was "Why because waking up inmates at 130 in the morning like dogs isn't going to work anymore." Hernandez received another version of the email where Cunningham's line was redacted which he argues was inappropriate because the statement did not refer to the health or personal information of other inmates. Another email improperly redacted a prison employee's request to Cunningham to investigate a concern raised by Hernandez's brother and to report back on her findings. In one version of the email, the prison employee's request was redacted. IDOC argues that Hernandez only points to two instances of possible over-redacting, although the statement attributed to Cunningham did not relate to the issues in this case: air mattresses and call buttons.

To remedy Hernandez's concerns, the Court **DIRECTS** IDOC to provide a redaction log for all documents that were redacted for reasons *other* than for the personal medical information of other inmates. IDOC is to certify in writing that the remaining redactions are solely for the protection of other inmate's personal medical information. Privilege log and certification shall be provided to Hernandez's counsel on or before **July 29, 2020**.

D. **Scheduling Order**

Finally, the Court **GRANTS** the parties' joint motion to amend the scheduling order (Doc. 135). The Court **ADOPTS** the deadlines set forth in the motion (Doc. 135). Dispositive motions and Daubert motions are now due **October 30, 2020**.

**IT IS SO ORDERED.**

**DATED:**   July 8, 2020

_____
**NANCY J. ROSENSTENGEL
Chief U.S. District Judge**