**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION**

| | | |
|---|---|---|
| JOSE HERNANDEZ, #M01795 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17-1335-NJR |
| | ) | |
| ILLINOIS DEPARTMENT OF | ) | |
| CORRECTONS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR**
**SUMMARY JUDGMENT**

NOW COME the Defendants, ILLINOIS DEPARTMENT OF CORRECTIONS, DEE

DEE BROOKHART, ANNE ELIZABETH TREDWAY, and LORIE CUNNINGHAM, by and

through their attorney, KWAME RAOUL, Attorney General of the State of Illinois, and hereby

file their Memorandum of Law in support of their Motion for Summary Judgment and state as

follows:

**INTRODUCTION**

Plaintiff, Jose Hernandez, was an inmate with the Illinois Department of Corrections,

who was incarcerated in Lawrence Correctional Center from July 7, 2014 through July 25, 2016.

(Exhibit A, Plaintiff's Deposition, pg. 15, 87; Exhibit E, Plaintiff's Living Unit History).

Plaintiff filed his Complaint on December 12, 2017 and his First Amended Complaint on April

25, 2018, under this case number. (Court Docs. 1 and 49). Plaintiff filed a Complaint in a

separate case number, 18-1442, on July 25, 2018. (ILSD Case No. 18-1442, Court Doc. 1).

Plaintiff moved to consolidate the cases and the Court consolidated them on March 14, 2019.

(Court Doc. 68). Plaintiff has alleged that Defendants failed to provide him appropriate medical

treatment and appropriate accommodations for a disability. (Court Docs. 1 and 49 and 18-1442 Court Doc. 1).

Defendants Brookhart, Tredway, and Cunningham are entitled to judgment as a matter of law on Plaintiff's Eighth Amendment claim. There is no evidence that Defendants personally exhibited deliberate indifference to an objectively serious medical need. Alternatively, Defendants are protected from liability by the doctrine of qualified immunity. For these reasons, Defendants Brookhart, Tredway, and Cunningham are entitled to summary judgment in their favor.

The Illinois Department of Corrections is entitled to judgment as a matter of law on Plaintiff's Americans with Disability Act and Rehabilitation Act claims, as there is no evidence that the Illinois Department of Corrections failed to provide Plaintiff with any accommodations to which he was entitled.

## UNDISPUTED MATERIAL FACTS[1]

1.	Plaintiff, Jose Hernandez, was an inmate within the Illinois Department of Corrections. At the time of the alleged incidents, he was incarcerated at Lawrence Correctional Center. (Court Doc. 1, 49, and Court Doc. 1, 18-1442; Exhibit A, Plaintiff's deposition, pg. 15, 87).

2.	Plaintiff has admitted he is not a doctor or nurse and has not had any formal medical training. (Exhibit A, pg. 12).

3.	Plaintiff testified that he complained to Defendant Tredway about the call light being ignored, but he did not know when the conversation took place.

---

[1] These facts are undisputed only for the purposes of this motion for summary judgment. Defendants also

(Exhibit A, pg. 151, 152, 153).

4.      Plaintiff admitted he understood Defendant Tredway was not a doctor or a nurse and did not actually work in the health care unit.  (Exhibit A, pg. 152).

5.      Plaintiff further acknowledged that the only reason he believed Defendant Tredway did not do anything to assist him is that the problem continued, however, he admitted he does not know what she tried to do to assist him with this issue, including with whom she may have talked to address the complaint.  (Exhibit A, pg. 153-154).

6.      Additionally, Plaintiff testified he understood Defendant Tredway was not personally responsible for responding to the call button and he was suing her because she was the Assistant Warden and therefore he believed she was responsible for the officers' actions.  (Exhibit A, pg. 154-155, 166).

7.      Plaintiff also acknowledged he did not know if the reason a nurse may not have responded to the call button was that he or she was assisting other inmates.  (Exhibit A, pg. 157).

8.      Plaintiff additionally testified he did not know if he ever complained to Defendant Tredway about his mattress and, if he did, what she may have done to assist him.  (Exhibit A, pg. 158-160).

9.      Plaintiff also did not recall if he ever complained directly to Defendant Tredway about someone failing to turn him over, but he admitted that it was not her personal responsibility to turn him.  (Exhibit A, pg. 167-168).

10.     Plaintiff remembered possibly talking to Defendant Brookhart about his

mattress on the walk when he was coming back from ADA gym, but he did not remember when the conversation occurred or what precisely he discussed. (Exhibit A, pg. 169-171). Plaintiff was not sure if he that was the only conversation or if he talked to her one other time about his mattress. (Exhibit A, pg. 171). Plaintiff does not remember what he complained about to Defendant Brookhart other than his mattress. (Exhibit A, pg. 175).

11.     Plaintiff acknowledged that he never wrote to Defendant Brookhart or communicated with her in any way other than in person one or two times. (Exhibit A, pg. 171, 173).

12.     Plaintiff additionally admitted he received multiple mattresses while at Lawrence and he is unsure if Defendant Brookhart helped him obtain the mattresses or not. (Exhibit A, pg. 173).

13.     Plaintiff testified he was suing Defendant Brookhart as the supervisor of other people. (Exhibit A, pg. 174, 176). Plaintiff agreed Defendant Brookhart was not a doctor or nurse. (Exhibit A, pg. 175).

14.     Plaintiff admitted he was not present when Defendant Brookhart met with staff members, so he does not know what she did or did not do to deal with his complaints. (Exhibit A, pg. 176).

15.     Plaintiff acknowledged he was suing Defendant Cunningham for actions related to her time as the HCUA. (Exhibit A, pg. 177).

16.     Plaintiff additionally admitted Defendant Cunningham was not a treating nurse who assisted him with turning or getting in or out of his wheelchair

or tending to any of his medical needs.  (Exhibit A, pg. 178).

17.     Plaintiff testified he is unsure of when he talked to Defendant Cunningham about his mattress and did not know if it was before or after he received a replacement mattress.  (Exhibit A, pg. 179).  Plaintiff admitted he does not know whether she assisted him in getting a replacement mattress.  (Exhibit A, pg. 180).

18.     Plaintiff also noted he may have complained to Defendant Cunningham about particular nurses when Defendant Cunningham was DON.  (Exhibit A, pg. 180).

19.     Plaintiff does not remember any other specific conversations with Defendant Cunningham and did not write to her or communicate with her in any other way.  (Exhibit A, pg. 180).

20.     Plaintiff acknowledged he does not know what efforts Defendant Cunningham made related to the nursing staff when she was DON to address his complaints.  (Exhibit A, pg. 181).

21.     As HCUA, Plaintiff believed she was able to assist him with ordering a new mattress, but he does not know or remember if he complained to her about his mattress before he got a new mattress.  (Exhibit A, pg. 181).

22.     Plaintiff acknowledged that in June 2016, he talked to Codefendant Allender and PA James about his mattress, and he is unsure if he talked to Defendant Cunningham about his mattress at that time.  (Exhibit A, pg. 183).

23.     Plaintiff acknowledged even when he had or has a working mattress, he has

trouble sleeping and he continues to have problems sleeping, even after he left Lawrence.  (Exhibit A, pg. 190-191).

24. Defendant Tredway was the Assistant Warden of Programs at Lawrence Correctional Center from August 2012 through September 2015.  (Exhibit C, Declaration of Defendant Tredway).

25. As the Assistant Warden of Programs, Defendant Tredway's duties included overseeing the programming for inmates at Lawrence as well as overseeing multiple departments, including the health care unit. She did not make decisions regarding the medical care of individual inmates. Only the medical doctor was able to order a particular treatment for any offender at any time.  (Exhibit C).

26. As Defendant Tredway was not a medical treatment provider or physician, she could not order an outside medical consult or surgery.  She also could not determine an individual's plan of care, including prescribing any type of medical device.  (Exhibit C).

27. Defendant Tredway was familiar with  Plaintiff and recalled he lived in the infirmary at Lawrence while he was an inmate at Lawrence. Defendant Tredway made rounds in the infirmary on an almost daily basis and specifically remembers talking to him.  (Exhibit C).

28. Defendant Tredway remembers Plaintiff complaining on one occasion about the nursing staff not responding to the call light or call button as fast as he wanted them to respond.  Defendant Tredway would have talked to the HCUA and the DON to address the issue with the nursing staff to

ensure they were following through with their responsibilities, including responding to the call light in a timely manner. When she was Assistant Warden of Programs, Phil Martin was the HCUA and Lorie Cunningham was the DON. (Exhibit C).

29.    Defendant Tredway believed Plaintiff's concern about the call light/call button was adequately addressed since he only brought up the issue involving the call light/call button one time to her and she made almost daily rounds in the infirmary. Defendant Tredway also noticed that the call light/call button system was functioning properly when she inspected the infirmary and on her rounds. Additionally, when she made rounds in the infirmary during the 11:00 p.m. to 7:00 a.m. shift, she noted that there were nurses present and attending to the individuals in the infirmary in one of her monthly unscheduled inspections. (Exhibit C).

30.    Defendant Tredway remembers on another occasion Plaintiff complained about his mattress to her and, although she does not remember the specific details, she would have followed up with the HCUA and/or the DON to ensure his complaint was addressed. (Exhibit C).

31.    Defendant Tredway does not recall reviewing any grievances written by Plaintiff, however, she would have handled any complaints to his verbal concerns in a similar manner and would have referred him to the appropriate staff member for resolution. (Exhibit C).

32.    Defendant Tredway did not ignore Plaintiff or any other inmate's complaints. (Exhibit C).

33.     Defendant Brookhart has been the Acting Warden of Lawrence Correctional Center ("Lawrence") since January 1, 2019. Prior to becoming Acting Warden, she was the Assistant Warden of Programs at Lawrence from February 2016-January 1, 2019. Prior to Lawrence, she was the Acting Warden and Assistant Warden of Programs at Robinson Correctional Center. Defendant Brookhart has worked for the Illinois Department of Corrections ("IDOC") since 2004. (Exhibit B, Declaration of Defendant Brookhart).

34.     While Defendant Brookhart was the Assistant Warden of Programs, she also served as the Americans with Disabilities Act ("ADA") Coordinator at Lawrence from February 2016-January 1, 2019. While at Robinson as the Assistant Warden of Programs, she was also the ADA Coordinator from late 2011/early 2012 until February 2016. (Exhibit B).

35.     Defendant Brookhart is not a trained physician and has no medical training, however she has a PhD in Psychology. (Exhibit B).

36.     Unless there is an order from the facility doctor or an emergency situation, Defendant Brookhart does not send inmates outside of the medical facility for treatment. (Exhibit B).

37.     As she is not a medical professional, Defendant Brookhart cannot order an outside medical consult or surgery. She also cannot determine an individual's plan of care, including prescribing any type of medical device, including an alternating air mattress. (Exhibit B).

38.     The medical treatment of inmates in IDOC, including at Lawrence, is

provided by Wexford Health Sources, Inc. ("Wexford") under a contract with IDOC.  Medical devices, including alternating air mattresses, may be prescribed by the treating physician or nurse practitioner and ordered by employees of Wexford.  These devices are not ordered or provided by employees of IDOC.  (Exhibit B, Exhibit D, Declaration of Defendant Cunningham[2]).

39. The only IDOC employees in the health care unit are the health care unit administrator ("HCUA"), the mental health/psychological administrator, and sometimes an office associate who works for the HCUA.  Wexford employs the nurses, doctors, and other medical treating staff, including the Director of Nursing ("DON").  (Exhibit B, Exhibit D).

40. Defendant Brookhart does not remember Plaintiff complaining directly to her about any issues he had with his alternating air mattress.  However, if he had told her about any problem with his alternating air mattress she would have referred the complaint to the HCUA or the DON to look into the issue and address it.  Defendant Brookhart did rounds in the infirmary frequently and if he had complained to her, she would have ensured the appropriate staff member addressed his concern.  (Exhibit B).

41. Defendant Brookhart does not recall reviewing any grievances written by Plaintiff, however, she would have handled any complaints in a similar manner to his verbal concerns and referred him to the appropriate staff member for resolution.  (Exhibit B).

42. Defendant Brookhart had and continues to have in person discussions with

---

[2] Exhibit D, Defendant Cunningham's Declaration, will be filed upon receipt of the signed declaration.

her staff on a daily basis. She did not and does not ignore inmate complaints. (Exhibit B)

43. Defendant Cunningham has been the Health Care Unit Administrator ("HCUA") at Lawrence Correctional Center ("Lawrence") since December 22, 2015. From 2008 to December 21, 2015, she was the Director of Nursing ("DON") at Lawrence and an employee of Wexford Health Sources, Inc. Defendant Cunningham is a registered nurse, but she does not regularly treat patients in my current administrative role. (Exhibit D).

44. As the HCUA, Defendant Cunningham's job responsibilities are to direct, coordinate, and review activities of healthcare operations in conjunction with the Medical Director and the Nursing Director. (Exhibit D).

45. Defendant Cunningham does not make decisions regarding the medical care of individual inmates. Only the medical doctor is able to order a particular treatment for any offender at any time. (Exhibit D).

46. As Defendant Cunningham is not a medical treatment provider or physician, she cannot order an outside medical consult or surgery. She also cannot determine an individual's plan of care, including the prescribing of any type of medical device, including an alternating air mattress. (Exhibit D).

47. Defendant Cunningham is familiar with Plaintiff and remembers he lived in the infirmary at Lawrence while he was an inmate at Lawrence. (Exhibit D).

48. When she was the DON and an employee of Wexford, she ensured an

alternating air mattress was ordered for Plaintiff, after a doctor prescribed it. (Exhibit D; Exhibit F, email from Defendant Cunningham regarding ordering alternating air mattress in October 2015).

49. Defendant Cunningham does not remember Mr. Hernandez complaining directly to her about any issues he had with his alternating air mattress. However, if he had told her about any problem with his alternating air mattress she would have referred the complaint to the DON to look into the issue and address it. After becoming the HCUA and an IDOC employee in December 2015, if Plaintiff had complained to Defendant Cunningham about his alternating air mattress, she would have referred the issue to the DON to address. Defendant Cunningham would not have ignored and does not ignore an inmate's complaints. (Exhibit D).

50. Defendant Cunningham does not recall reviewing any grievances written by Plaintiff, however, she would have handled any complaints in a similar manner to his verbal concerns and referred him to the appropriate staff member for resolution. (Exhibit D).

## SUMMARY JUDGMENT STANDARD

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. R. Civ. P. 56(a). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–587, 106 S.Ct. 1348 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the United States Supreme Court held that summary judgment is mandatory if there is no genuine issue as to any material fact for trial, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 323. The plaintiff must come forward with evidence of a specific factual dispute, evidence that would reasonably permit the finder of fact to find in Plaintiff's favor on a material question; otherwise, the court must enter summary judgment against the Plaintiff. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994); *International Union of Operating Engineers v. Associated General Contractors*, 845 F.2d 704, 708 (7th Cir. 1988).

Summary judgment is the "put up or shut up" moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Steen v. Meyers*, 486 F.3d 1017, 1022 (7th Cir. 2007); *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on the pleadings, but setting out specific facts showing a genuine issue for trial. Fed. R. Civ. Pro. 56(e). Inferences and opinions may not be based on flights of fancy, speculations, hunches, intuitions, or rumors remote from the affiant's experience. *Visser v. Packer Eng. Associates, Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). When opposing parties tell

two different stories and one of them is blatantly contradicted by the record so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769 (2007); *Henning v. O'Leary,* 477 F.3d 492, 496 (7th Cir. 2007).

## ARGUMENT

**I.     Defendants Brookhart, Tredway, and Cunningham did not have sufficient personal involvement in Plaintiff's medical care.**

Liability under 1983 arises only when a plaintiff can show that a defendant was "personally responsible for a deprivation of a constitutional rights. *Vance v. Peters*, 97 F. 3d 987, 992 (7th Cir. 1996). "Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise." *Burks v. Raemisch,* 555 F.3d 592, 594 (7th Cir. 2009). Thus, a supervisor cannot be held liable in a § 1983 action unless the supervisor was personally involved in the wrongful conduct such that he or she caused or participated in the alleged constitutional violations. *Boyce v. Moore,* 314 F.3d 884, 888 (7th Cir. 2002).

Plaintiff alleges he was being denied appropriate medical care at Lawrence Correctional Center in violation of the Eighth Amendment. (Court Doc. 1, 49, and Court Doc. 1, 18-1442). Specifically, Plaintiff alleges Defendant Tredway was deliberately indifferent by not ensuring nursing staff answered the call light/call button and Defendants Brookhart and Cunningham were deliberately indifferent in not ensuring Plaintiff was provided with his medically prescribed mattress.

Defendants Brookhart, Tredway, and Cunningham cannot be liable as they did not have direct personal involvement in Plaintiff's medical care.   Defendant Brookhart has been the

warden of Lawrence Correctional Center since January 1, 2019. (Exhibit B). Prior to becoming Acting Warden, she was the Assistant Warden of Programs at Lawrence from February 2016-January 1, 2019. (Exhibit B). Defendant Tredway was the Assistant Warden of Programs at Lawrence Correctional Center from August 2012 through September 2015. (Exhibit C). Defendant Cunningham has been the Health Care Unit Administrator and an IDOC employee since December 22, 2015. (Exhibit D). Plaintiff has acknowledged that none of these Defendants had involvement in the actual medical care of Plaintiff. (Exhibit A, pg. 152, 175, 178; Exhibit B; Exhibit C; Exhibit D). Therefore, Plaintiff cannot show that Defendants Brookhart, Tredway, or Cunningham acted with deliberate indifference to his medical needs. Plaintiff was being provided with the medical treatment and accommodations prescribed by the treating physicians at Lawrence Correctional Center. (Court Doc. 1, 49, Doc. 1 of 18-1442). Plaintiff lived in the infirmary, which was staffed by medical professionals employed by Wexford. (Exhibit A, pg. 153, 154, 155, 166, 173, 174, 176, 179, 180, 181; Exhibit B, Exhibit D, and Exhibit E). Defendant Tredway noted Plaintiff's complaints about nursing staff not responding to the call light/call button on one possibly two occasions and discussed the matter with the DON to ensure nurses were responding appropriately. (Exhibit A, pg. 154-155; Exhibit C). Defendants Brookhart and Cunningham do not recall Plaintiff specifically complaining to them personally about his mattress, but they would have directed his concerns to the DON. (Exhibit B and Exhibit D). Defendant Cunningham ensured Plaintiff was ordered a replacement mattress in 2015 when she was the DON and would have referred him to the new DON if he complained her about his mattress after she was HCUA. (Exhibit D, Exhibit F). Plaintiff even testified that he talked to Co-Defendant Allender about his mattress and was provided a replacement mattress in June 2016. (Exhibit A, pg. 183).

## II.    Defendants were not deliberately indifferent to Plaintiff's medical needs.

To prevail in his claim as to Plaintiff's medical treatment, Plaintiff must show deliberate indifference to a serious medical need.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  At a minimum, this requires actual knowledge of impending harm, which is easily preventable so that a conscious, culpable refusal to prevent harm can be inferred from Defendant's failure to prevent it.  *Dixon v. Godinez*, 114 F. 3d 640, 645 (7th Cir. 1997); *Duckworth v. Franzen*, 780 F. 2d 645, 653 (7th Cir. 1985).  Deliberate indifference is more than mere negligence and approaches intentional wrongdoing. *Farmer*, 511 U.S. at 834.

To state a claim that a prison official was deliberately indifferent to an inmate's health, under the Eighth Amendment, the prisoner must establish that he suffered from an objectively serious medical need and that the officials were subjectively indifferent to that need.  *Id.*  A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a layperson would perceive the need for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). To satisfy the subjective component, a prisoner must demonstrate that prison officials acted with a sufficiently culpable state of mind. *Id.* Mere negligence is insufficient to establish liability. *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). Prison officials, who are non-medical professionals, are entitled to rely upon the judgment of medical professionals to absolve liability under the Eighth Amendment. *Lee v. Young*, 533 F.3d 505, 511 (7th Cir. 2008).

Furthermore, the Seventh Circuit Court of Appeals recently held that "as a layperson, the warden could rely on the medical staff's expertise as long as he did not ignore [an inmate] or his mistreatment." *Diggs v. Ghosh, et. al.,* 850 F.3d 905, 911 (7th Cir. 2017).  In *Diggs*, the warden took no action in response to the inmate's repeated complaints about his knee, and therefore the district court's granting of summary judgment was overturned.  *Id.*

For purposes of this motion, Defendants admit that Plaintiff was a quadriplegic who needed full time care in the infirmary of Lawrence Correctional Center. However, Defendants Brookhart, Tredway, and Cunningham were not deliberately indifferent toward Plaintiff's medical needs. Plaintiff has no evidence to the contrary. (Exhibit A, pg. 153, 154, 155, 166, 173, 174, 176, 179, 180, 181). Plaintiff does not know what efforts Defendants may have taken to assist him with his complaints. (Exhibit A, pg. 153, 154, 155, 166, 173, 174, 176, 179, 180, 181). Plaintiff has admitted Defendants were not medical doctors and not treating nurses and therefore were not directly responsible for responding to the call button or ordering him a new mattress. (Exhibit A, pg. 152, 175, 178). Plaintiff testified he was suing them since he believed they were the supervisors of the individuals responsible. (Exhibit A, pg. 153, 154, 155, 166, 173, 174, 176, 179, 180, 181). Defendants ensured Plaintiff was provided with medical treatment and with the accommodations recommended by his medical doctors. (Exhibits B, C, D, F).

The Seventh Circuit analyzed this issue recently in a case decided January 29, 2019, *Giles v. Godinez*, No. 15-3077, (7th Circuit January 29, 2019). In *Giles*, Plaintiff argued the Defendants were deliberately indifferent towards his serious medical needs and the Seventh Circuit held once again that "non-medical officials may reasonably defer to the judgment of medical professionals regarding inmate treatment." *Id.* at 14. The Court further stated the "non-medical officials relied on the medical professionals to provide proper treatment, and there was nothing to give notice to the officials of a need to intervene." *Id.* at 15. This reasoning may be applied to Defendant Brookhart, Tredway, and Cunningham. None of them were directly responsible for providing Plaintiff with medical care. (Exhibit A, pg. 152, 175, 178; Exhibits B, C, D). Furthermore, the Seventh Circuit in *Giles* found that "no reasonable jury could find that

the defendants knew of and disregarded an excessive risk to Giles's health and safety, and thus summary judgment on this claim was appropriate." *Giles,* at 16.

When this similar inquiry is made in the present case, there is no evidence that Defendants knew or and disregarded an excessive risk to Plaintiff's health and safety. Defendants reasonably relied on medical professionals to provide Plaintiff with community standard medical care and appropriate accommodations. When Plaintiff informed Defendant Tredway of an issue he was having with nurses allegedly turning off the call light/call button, she discussed the issue with the DON. (Exhibit A, pg. 153, 154-155, 166; Exhibit C). She did not just ignore Plaintiff's concerns. (Exhibit C). Plaintiff could not attest if the nurses were actually ignoring him or whether they were assisting other inmates when he also needed assistance. (Exhibit A, pg. 157). Plaintiff admitted he does not know what steps Defendant Tredway took to assist him. (Exhibit A, pg. 153, 154-155, 166). Additionally, Plaintiff was provided with multiple mattresses while he was at Lawrence and he does not know if he talked with Defendants Brookhart or Cunningham before or after he received a new mattress. (Exhibit A, pg. 173, 181, 183). Plaintiff acknowledged that in June 2016, he talked to Codefendant Allender and PA James about his mattress, and he is unsure if he talked to Defendant Cunningham about his mattress at that time. (Exhibit A, pg. 183).

Additionally, an inmate's dissatisfaction or disagreement with a doctor's prescribed course of treatment does not necessarily give rise to a constitutional claim. *Snipes v. Detella*, 95 F. 3d 586, 592 (7th Circ. 1996). Simply because Plaintiff disagreed with the medical professionals' treatment plan for him does not mean that the Defendants were deliberately indifferent to his medical needs.

**III. There is no violation of the ADA or the Rehabilitation Act because reasonable accommodations were provided to Plaintiff.**

The ADA was enacted "to provide a clear and comprehensive national mandate for elimination of discrimination against individuals with disabilities." *Phipps v. Sheriff of Cook County*, 681 F. Supp. 2d 899, 913 (2009). The Act prohibits discrimination against people with disabilities in three areas: (1) employment (Title I); (2) public services, programs and activities (Title II); and (3) public and private lodging (Title III). *Id.*

Title II of the ADA provides, "no qualified individual with a disability shall by reason of such disability, be excluded from participation in or be denied benefits of the service, programs, activities of public entity or be subject to discrimination by such entity." 42 U.S.C. §12132 Claims under Title II must be brought against governmental (public) entities, not against individuals. *Id.* Additionally, to prove a violation under Title II, the plaintiff must show that the denial of services or discrimination against him was specifically because of his disability. *Phipps*, 681 F. Supp. 2d at 913 (citations omitted). The Supreme Court has found that correctional facilities are covered by Title II of the Act. *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 213 (1998).

In order to show a violation of the ADA, the plaintiff must prove that he is a "qualified individual with a disability", that he was denied "the benefits of the services, programs, or activities of a public entity" or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was "by reason of" his disability. *See* 42 U.S.C. § 12132. Proving the first element of the case requires, in turn, that the plaintiff show that he "meets the essential eligibility requirements" for participating in the program, with or without reasonable accommodations. *See Id.*, § 12131(2). The ADA defines "disability" as: A) a physical or mental

impairment that substantially limits one or more of the major life activities of such individual; B) a record of such impairment; and C) being regarding as having such impairment. *Id.* at 12102[1].

The Rehabilitation Act provides, "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.SC. 794(a). The Rehabilitation Act is "materially identical to and the model for the ADA except that it is limited to programs that receive federal financial assistance." *Crawford v. Indiana Department of Corrections*, 115 F. 3d 481, 483 (7th Cir. 1997), abrogated on other grounds, see *Erickson v. Board of Governors of State colleges and Universities*, 207 F. 3d 945, 948-49 (7th Cir. 2000).

Under both the ADA and the Rehabilitation Act, prisons must make reasonable accommodations for inmates with disabilities. *Jaros v. Illinois Dept. of Corrections*, 684 F. 3d 667, 672 (7th Cir. 2012). The ADA prohibits discrimination against the disabled in the provision of public services, but the statute neither guarantees any particular type of "services for disabled persons, nor assures maintenance of services previously provided." *Lincoln CERCPAC v. Health and Hosps. Corp.*, 147 F.3d 165, 168 (2nd Cir 1998). In addition, the statutes do not guarantee disabled persons "equal results" from the prisons of a public service or benefit. *Alexander v. Choate*, 469 U. S. 287, 304 (1985); See also *Henrietta D. v. Bloomberg*, 331 F. 3d 261, 274 (2nd Cir. 2003). In the prison setting, accommodations should be judged in light of overall institutional requirements which include safety, security, and feasibility. See *Love v. Westville Correctional Center*, 103 F. 3d 558, 561 (6th Cir. 1996). Plaintiff has continuously been provided with appropriate accommodations, including a bed assignment in the infirmary

where he was provided with an alternating air mattress to accommodate his medical needs. (Exhibit E; Exhibit F). The Seventh Circuit has held that "failure to attend to the medical needs of its disabled prisoners" does not violate the Americans with Disabilites Act. *Bryant v. Madigan*, 84 F. 3d 246, 249 (7th Cir. 1996). Here, Plaintiff has alleged that failing to respond to the call button and failure to provide him with a medically prescribed mattress were violations of the ADA. (Court Doc. 1, 49, Court Doc. 1, 18-1442). However, Plaintiff is essentially complaining, like the Plaintiff in *Bryant*, that he received "incompetent treatment" for his disability and he is not "complaining of being excluded from some prison service, program or activity, for example an exercise program that his paraplegia would prevent him from taking part in without some modification of the program." *Bryant,* 84 F. 3d at 249. Additionally, the Seventh Circuit found that "incarceration which requires the provision of a place to sleep, is **not** a 'program' or 'activity.'" *Id. emphasis added.* As applied to this case, if the provision of a medically prescribed mattress or responding to the call button in a timely manner were only relevant to inmates who were protected by the ADA, it would mean that not responding to the call button or being provided with a medically appropriate mattress would only apply to disabled individuals, not those in the infirmary for other medical issues. The Court noted that would mean "that a disabled person whose disability is treated negligently have a federal malpractice claim by virtue of the ADA, whereas a sick or injured, but not disabled person … must be content with the remedy that the state law of medical malpractice provides*. Id.*

On November 19, 2020, the Seventh Circuit dealt with whether an inmate's complaint about the size of his cell and tranportation in a non ADA accessible van constituted a violation of the ADA. *Shuhaiber v. Illinois Department of Corrections*, case no. 19-244, 7th Circuit 2020. The Court held, Plaintiff had to show he "'was denied the benefits of the services, programs, or

activities' of the Center because of his disability." *Id. citing Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (citation and quotation marks omitted). The Court found that "although alleging difficulties with his cell, the showers, and the vans, Shuhaiber did not say anything about his particular circumstances or accommodations that kept him from accessing the Center's facilities or services on the same basis as other inmates." *Id. citing Wagoner*, 778 F. 3d at 592-593 and *Jaros*, 684 F. 3d at 672. Plaintiff is in a similar situation here. He is unable to show how he was not in a similar situation as the other inmates living in the infirmary relative to accessing the call light/call button and to other inmates who needed a medically prescribed mattress who may not have been disabled. Additionally, IDOC contracted the provision of medical care and medical supplies to Wexford Health Sources, Inc., therefore employees of Wexford Health Sources, Inc. were responsible for responding to the call light/call button and for ordering and providing Plaintiff's medically prescribed mattress. (Exhibits B and D).

**IV.      Defendants are entitled to qualified immunity on the Eighth Amendment claim.**

Government officials performing discretionary functions generally are shielded from liability for civil damages if their conduct does not violated clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 817, 818 (1982). To determine whether an official is entitled to qualified immunity, a two part inquiry is required: (1) whether a constitutional right would have been violated on the facts alleged, and (2) whether the right alleged to have been violated was clearly established. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted. *Id.* at 202. An official who makes a reasonable mistake as to what the law requires is entitled to the defense of qualified immunity. *Id.* at 205.

Under the first prong of the analysis, the facts alleged here do not give rise to a constitutional violation. As analyzed in the preceding sections, Defendants did not violate Plaintiff's rights. Under the second prong of the analysis, Defendants are also entitled to qualified immunity. Under these facts, Defendants could not have known that they might be liable even though they did not actually participate in any aspect of plaintiff's medical care. The Court has held that "liability depends on each defendant's knowledge and actions, not on the knowledge or actions of the persons they supervise." *Burks*, 555 F.3d at 594. The Court also held that "a layperson's failure to tell the medical staff how to do its job cannot be called deliberate indifference." *Id.* at 596. Here, Defendant Tredway spoke to the DON about ensuring nurses were responding to the call light/call button and noted that nurses were working when she toured the infirmary both during the day and during unscheduled inspections. (Exhibit C). Additionally, Defendants Brookhart and Cunningham would have referred Plaintiff's concerns regarding his mattress to the DON to inspect and remedy his mattress situation.

The Court also addressed this in *Johnson v. Doughty*, in which it held that the warden "was aware of Johnson's complaints … and made sure that medical care was available to Johnson so that qualified medical professionals could determine if Johnson did indeed need surgery." *Johnson v. Doughty*, 433 F.3d 1001, 1011 (7th Cir. 2006). The Court held that the warden "reasonably relied on the expertise of the medical professionals," which is the case here. *Id* The Court has found that the "division of labor is important not only to bureaucratic organization, but also to efficient performance of tasks; people who stay within their roles can get more work done…" *Burks,* 555 F. 3d at 595. The applicable law supports the actions taken by Defendants Brookhart, Tredway, and Cunningham. Furthermore, an inmate's dissatisfaction or disagreement with a doctor's prescribed course of treatment does not necessarily give rise to a

constitutional claim. *Snipes,* 95 F. 3d at 592. Even if Plaintiff disagreed with the care he was provided, this does not rise to the level of a constitutional claim.

For the forgoing reasons, Defendants are entitled to qualified immunity.

## **CONCLUSION**

Summary Judgment should be granted in favor of Defendants Brookhart, Tredway, and Cunningham. There is no genuine issue of material fact present. Defendants had nothing to do with decisions regarding Plaintiff's medical care. These Defendants are entitled to judgment as a matter of law on Plaintiff's Eighth Amendment claim. In the alternative, they enjoy qualified immunity, as their actions were well within that allowed by the applicable case law. Additionally, the Illinois Department of Corrections is entitled to summary judgment because Plaintiff was provided with appropriate accommodations for his alleged disability, as determined by the medical staff, however, his mattress and whether nurses responded appropriately to his use of a call button/call light were not programs or services and therefore not covered by the ADA .

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request that this Honorable Court grant their Motion and enter Summary Judgment in their favor and against the Plaintiff.

Respectfully submitted,

Illinois Department of Corrections, DeeDee Brookhart, Anne Elizabeth Tredway, and Lorie Cunningham,

    Defendants,

KWAME RAOUL, Attorney General, State of Illinois,

    Attorney for Defendants,

Rachel Schwarzlose, #6283966
Assistant Attorney General
201 West Pointe Dr., Suite 7
Swansea, IL 62226
(618) 236-8781

Of Counsel.

BY:   s/ Rachel Schwarzlose
       Rachel Schwarzlose, #6283966
       Assistant Attorney General

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION**

JOSE HERNANDEZ, #M01795     )
     )
     Plaintiff,     )
     )
vs.     )     Case No. 17-1335-NJR
     )
ILLINOIS DEPARTMENT OF     )
CORRECTONS, et al.,     )
     )
     Defendants.     )

## CERTIFICATE OF SERVICE

     I hereby certify that on November 30, 2020, the foregoing document, <u>Memorandum in Support of Defendants' Motion for Summary Judgment</u>, was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Sarah Catalano | scatalano@eimerstahl.com |
| Scott Solberg | ssolberg@eimerstahl.com |
| Emily Sullivan | esullivan@simerstahl.com |
| Dennis Harms | dharms@sandbergphoenix.com |
| Kevin Peek | kpeek@sandbergphoenix.com |

Respectfully Submitted,

  s/ Rachel Schwarzlose
_____
Rachel Schwarzlose, #6283966
Assistant Attorney General
201 West Pointe Dr. Suite 7
Swansea, IL 62226
Phone: (618) 236-8781
Fax: (618) 236-8620
E-Mail: rschwarzlose@atg.state.il.us