IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSÉ HERNANDEZ, <br><br> **Plaintiff,** <br><br> v. <br><br> ILLINOIS DEPARTMENT OF CORRECTIONS, WEXFORD HEALTH SOURCES, INC., JOHN COE, ANNE ELIZABETH TREDWAY, LORIE CUNNINGHAM, DEE DEE BROOKHART, and JON-MICHAEL ALLENDER, <br><br> **Defendants.** | Case No. 3:17-CV-1335-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on a Motion to Exclude Opinion Testimony of Defendants Coe and Allender filed by Plaintiff José Hernandez (Doc. 149) and a Motion to Exclude Plaintiff's Expert Witnesses filed by Defendants Wexford Health Sources, Inc., John Coe, and Jon-Michael Allender (Doc. 155). For the following reasons, the motions are denied.

### LEGAL STANDARD

"A district court's decision to exclude expert testimony is governed by Federal Rules of Evidence 702 and 703, as construed by the Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)." *Brown v. Burlington Northern Santa Fe Ry. Co.*, 765 F.3d 765, 771 (7th Cir. 2014); *see also Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). The *Daubert* standard applies to all expert

testimony, whether based on scientific competence or other specialized or technical expertise. *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S.137, 141 (1999)).

> Federal Rule of Evidence 702 provides:
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Under this rule, expert testimony must be both relevant to assisting the trier of fact and sufficiently reliable. *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015).

The district court is the gatekeeper with respect to the screening of expert testimony. The "key to the gate is not the ultimate correctness of the expert's conclusions. Instead, it is the soundness and care with which the expert arrived at her opinion; the inquiry must 'focus . . . solely on principles and methodology, not on the conclusions they generate.'" *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013) (citing *Daubert*, 509 U.S. at 595). "So long as the principles and methodology reflect reliable scientific practice, "[v]igorous cross-examination, presentation of contrary evidence, and

careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (quoting *Daubert*, 509 U.S. at 596).

Finally, an expert must explain the methodologies and principles that support his or her opinion; he or she cannot simply assert a "bottom line" or *ipse dixit* conclusion. *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) (quoting *Minix v. Canarecci*, 597 F.3d 824, 835 (7th Cir. 2010)). "[W]here such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592). The district court possesses "great latitude in determining not only *how* to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable." *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009) (citing *Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007)). "The critical inquiry is whether there is a connection between the data employed and the opinion offered." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 781 (7th Cir. 2017) (quotation omitted).

## Discussion

### I. Motion to Exclude Opinion Testimony of Defendants Coe and Allender

With this motion, Hernandez seeks to exclude expert opinion testimony from Defendants Dr. Coe and Allender for three reasons: (1) the Rule 26(a)(2)(C) disclosures provided by the Defendants for Dr. Coe and Allender fail to meet the basic requirements of the Rule, leaving Hernandez to guess at the subject and substance of their expert opinions; (2) Dr. Coe and Allender are not qualified to offer expert opinions, and their

testimony should be excluded under *Daubert* and Rule 702; and (3) experts may not offer opinions on legal questions, such as compliance with the ADA or the standard for "deliberate indifference."

### A.     Rule 26(a)(2)(C) Disclosures

An expert witness must provide a written report "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." FED. R. CIV. P. 26(a)(2)(B). If a witness does not fall under one of those categories, the disclosure need only include the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705, and a summary of the facts and opinions to which the witness is expected to testify. FED. R. CIV. P. 26(a)(2)(C).

On September 15, 2020, the Wexford Defendants timely disclosed Dr. Coe and Allender as non-retained expert witnesses. (Docs. 149-11). Depositions of expert witnesses were due to be taken by October 15, 2020, but Hernandez did not request a follow-up deposition of Dr. Coe or Allender. Nevertheless, upon Hernandez's request, Dr. Coe and Allender prepared a supplemental expert disclosure on October 8, 2020, that more thoroughly detailed their expert opinions. (Doc. 149-15).

Hernandez now argues that Defendants' witnesses should be excluded as experts because their supplemented disclosures do not specify what opinions Dr. Coe and Allender may offer or the specific bases for those opinions. Hernandez also asserts that at the time he deposed Defendants, he had no way of knowing they would be disclosed as expert witnesses, nor did he have an opportunity to inquire into their specific expert

opinions, the evidence on which their opinions are based, whether they used reliable principles and methods to come to these opinions, whether they applied those principles and methods in this case, and whether they are qualified to testify as experts.

The Court disagrees. Non-retained experts are only required to provide the subject matter on which the witness is expected to present evidence and a summary of the facts and opinions to which the witness is expected to testify. FED. R. CIV. P. 26(a)(2)(C). That is what Defendants did here. Dr. Coe and Allender indicated that one or both of them may testify as to (1) appropriate preventative and other care and treatment for skin breakdown; (2) appropriate care and treatment for a fractured ulna; (3) the cause or causes of any injuries claimed by Hernandez as they relate to the care they provided; and (4) issues of liability and damages. (Doc. 149-15). They further disclosed that they will opine as to the specific care they provided and how it was appropriate. (*Id.*). Their opinions are based on their education, training, and experience, including but not limited to their positions as medical professionals in the correctional medicine setting. (*Id.*). Finally, they disclosed the factual basis for their opinions: their personal recollection of Hernandez, their notations in medical records, other medical professionals' notes in the medical records, other documents produced during discovery, and their own customs and practices. (*Id.*). If Hernandez desired more specific information on Defendants' opinions, he could have requested an additional deposition or served supplemental interrogatories.

Hernandez also argues that Defendants' references to "notations in medical records" and "documents produced during discovery" are insufficient to comply with

Rule 26(a)(2)(C), but his citations to other district court cases are unconvincing. In *Avnet, Inc. v. Motio, Inc.*, the expert in a patent case incorporated a 119-page document by reference into his report without specifying which pages were applicable. *Avnet, Inc. v. Motio, Inc.*, No. 12 CV 2100, 2016 WL 927194, at *5 (N.D. Ill. Mar. 4, 2016). Here, Hernandez's medical records are cited prolifically by the parties in their summary judgment motions, and the Court presumes that Hernandez is quite familiar with the records referred to by Defendants.[1] In *Brunswick v. Menard, Inc.* and *Ballinger v. Casey's Gen. Store, Inc.*, the parties failed to turn over any expert disclosures by the deadline and instead tried to rely solely on medical records. *Brunswick v. Menard, Inc.*, No. 2:11 CV 247, 2013 WL 5291965, at *5 (N.D. Ind. Sept. 19, 2013); *Ballinger v. Casey's Gen. Store, Inc.*, No. 1:10-CV-1439-JMS-TAB, 2012 WL 1099823, at *4 (S.D. Ind. Mar. 29, 2012). Clearly, *Brunswick* and *Ballinger* are inapplicable here.

Defendants' disclosures meet the requirements of Rule 26(a)(2)(C), and their opinions and testimony will not be excluded on this basis.

### B.    Qualifications Under *Daubert* and Rule 702

Hernandez next asserts that Dr. Coe and Allender are not qualified to testify as experts. He claims their testimony will not help the jury understand the evidence because they were involved in the events at issue and their testimony will be self-serving. He further avers that Defendants lack the specialized expertise necessary to testify about

---

[1] Of course, Defendants may only testify as to their own observations. They may not opine on medical records from Hernandez's treatment after he was released from Lawrence. *Brunswick v. Menard, Inc.*, No. 2:11 CV 247, 2013 WL 5291965, at *4 (N.D. Ind. Sept. 19, 2013); ("If a treating physician intends to testify beyond his observations, he must provide a full expert report.").

Hernandez's broken arm, any surgeries Hernandez has had or may need in the future, or Hernandez's potential damages. Next, he claims Dr. Coe and Allender are unqualified because they have not identified the facts on which they relied to come to their conclusions. Finally, he asserts Dr. Coe's opinions are unreliable because his testimony contradicts basic medical practices.

Again, the Court disagrees. In *Rowe v. Gibson*, cited by Hernandez, the Seventh Circuit held that the district court erred in relying on a defendant as the expert witness. *Rowe v. Gibson*, 798 F.3d 622, 631 (7th Cir. 2015). Hernandez claims "this case is no different," but that's not true. Unlike here, the plaintiff in *Rowe* was *pro se* and had no expert of his own. *Id.* Furthermore, the expert never physically examined or had diagnostic testing done on the plaintiff, and he provided contradictory opinions and evidence. *Id.* In contrast, Defendants here examined and treated Hernandez. And Hernandez is represented by counsel who deposed Defendants and will be able to object to questionable testimony and vigorously cross-examine Defendants at trial. *See Daubert*, 509 U.S. 579 at 596.

Hernandez also asserts that Defendants Coe and Allender are general medical practitioners and have no specific training or experience related to orthopedics or wound care. But "courts often find that a physician in general practice is competent to testify about problems that a medical specialist typically treats." *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010).

To the extent Hernandez claims Dr. Coe has offered "contradictory" and "implausible" statements about Hernandez's medical treatment, demonstrating

unreliability and a lack of expertise, the Court is unpersuaded. Hernandez refers to Dr. Coe's testimony that Hernandez did not need to be turned and repositioned while laying on an alternating air mattress, along with evidence that Dr. Coe still ordered nurses to turn and reposition Hernandez. (Doc. 149-17). This interpretation of Dr. Coe's testimony itself is unreliable. Dr. Coe testified that it was not medically necessary to turn Hernandez if he had an alternating air mattress, but that he may *want* to be turned. (*Id.* at p. 12). He later testified that Hernandez requested turning at night, so Dr. Coe wrote a note on his chart for the nurses to reposition him upon request. (*Id.* at p. 21). Nothing about this testimony is contradictory. Hernandez also contends that Dr. Coe is unreliable because he made errors with regard to basic wound diagnoses, *i.e.*, he diagnosed Hernandez with a fistula rather than a pressure ulcer. Dr. Coe also erroneously stated that Hernandez's arms are weak and he doesn't use them much. These arguments go to the weight of Dr. Coe's testimony, however, not the reliability. Hernandez certainly can challenge Dr. Coe's opinions at trial through cross-examination and with the opinions of his own experts.

Because Dr. Coe and Allender's testimony is reliable and will assist the jury in understanding the evidence, the Court finds they are qualified to serve as expert witnesses.

C. **Opinions on Legal Issues**

Finally, Hernandez seeks to exclude any testimony from Dr. Coe and Allender as to legal conclusions, including whether they were deliberately indifferent and whether the ADA was violated. Defendants agree that they may not opine as to legal conclusions

but assert they may offer defenses of their actions, the medical care provided, and the reason behind their actions, in an effort to demonstrate to the jury that there were no constitutional violations. Defendants note that if either Dr. Coe or Allender attempt to offer a legal conclusion at trial, the issue can be taken up then. The Court agrees; Hernandez is free to object to questionable testimony at trial. Defendants will not be barred from testifying to facts and opinions regarding the elements of a claim for deliberate indifference or a violation of the ADA.

For these reasons, Hernandez's motion is denied.

## II.     Motion to Exclude Plaintiff's Experts

The Wexford Defendants seek to exclude the testimony of Plaintiff's retained experts, Dr. Paul Lamberti and Dr. Rachna Soriano, because they lack requisite background and knowledge to offer their opinions and because those opinions are not based on sufficient facts or data. Defendants also assert the experts' conclusions have insufficiently reliable evidentiary support.

### A.     Paul Lamberti, M.D.

Dr. Lamberti is a licensed orthopedic surgeon who currently serves as the Co-Chair of the Orthopedic Division and Director of Hand, Wrist, and Elbow Care at the John H. Stroger Hospital of Cook County. (Doc. 148-11). Dr. Lamberti also is an assistant professor of orthopedic surgery at Rush Medical College of Rush University Medical Center. (*Id.*). He is certified by the American Board of Orthopedic Surgeons and is a fellow at the American Academy of Orthopedic Surgeons. (*Id.*). Dr. Lamberti reports that, in his current position, he treats a significant portion of Cook County's inmate population,

which requires him to routinely conduct tendon transfers and fracture care. (*Id.*).

Dr. Lamberti's opinions include that:

- Dr. Coe's treatment of Hernandez's broken arm "constitutes a gross deviation from acceptable health care";

- the July 6, 2015 x-ray of Hernandez's arm showed it clearly had not healed;

- Hernandez should have received orthopedic treatment for his broken arm until an x-ray confirmed the bone had in fact healed;

- treating Hernandez's arm was especially important because he "rel[ies] on [his] arms for stability" and needs to "preserve[] the limited limb functions he does have"; and

- Dr. Coe's decision to discontinue treatment because it was "logistically difficult to do so" and because Hernandez had limited arm function had no medical basis.

(Doc. 162-1).

Defendants acknowledge that Dr. Lamberti is an orthopedic specialist and take no issue with his qualifications generally. Instead, they assert he lacks sufficient patient care experience within the correctional center environment to qualify as an expert general physician in this specific case. Defendants point to Dr. Lamberti's testimony that he has no experience discussing an ulnar fracture with a bedside provider or medical director at a jail or prison, the fact that he is not a "frontline or bedside provider" for detainees or inmates, and his admission that he is not familiar with the generally accepted practice standards applicable to a medical director of a health care unit in a prison. Defendants cite to *Gayton*, 593 F.3d at 618, where the Court of Appeals held that because a doctor was an expert in the area of prison healthcare, his testimony on the defendants' failure to

provide an adequate standard of medical care could assist the trier of fact in understanding the evidence or a fact in issue. Defendants extend that reasoning to assert that a doctor who has *no* experience in the area of prison healthcare, like Dr. Lamberti, would be *unable* to assist the trier of fact to understand the evidence or to determine a fact in issue. Thus, his testimony should be excluded.

Defendants' reasoning is illogical and unsupported by *Gayton* or any other precedent. Whether a proposed witness qualifies as an expert is determined by "comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Gayton*, 593 F.3d at 616 (quoting *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990)). "Anyone with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness." *Tuf Racing Prod., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000).

Here, the Court finds that Dr. Lamberti's experience as a board-certified orthopedic surgeon, as well as his experience with correctional health care, *i.e.*, his treatment of inmates at the Cook County Jail, provides a sufficient basis for his expert testimony. Dr. Lamberti testified that he provides inmates with the legal standard of medical care that they are entitled to, that ulnar shaft fractures are one of the more common fractures that come into his practice, and that he "fix[es] ulnas constantly." (Doc. 153-1 at pp. 7-8). He also testified that he is commonly involved in the non-surgical treatment of ulnar fractures. (*Id.* at p. 8). Based on Dr. Lamberti's knowledge, education, skill, and experience with ulnar fractures, as well as his work on inmates in Cook County,

the Court finds he is well qualified to offer opinions regarding the care provided by Dr. Coe or any other Wexford Defendant.

Defendants next claim Dr. Lamberti is not qualified to provide a legal conclusion as to whether Dr. Coe or any Wexford Defendant created or condoned any policy, practice or custom that resulted in inadequate healthcare. To the extent Dr. Lamberti were to offer any legal opinions, Hernandez agrees such testimony should not be permitted. But because Dr. Lamberti has only provided medical opinions, and Defendants have provided to proof to the contrary, Defendants' motion will be denied on this ground.

Defendants also contend that Dr. Lamberti "appears to have allowed his own medical expertise to affect his opinions of Dr. Coe's actions based on the available medical evidence." Defendants explain that Dr. Coe based his medical decisions on the radiology report from July 6, 2015, in which the radiologist stated there was "increased bridging callus at the fracture site," meaning Hernandez's fracture was healing. (Doc. 156-1 at p. 23). Dr. Lamberti disagreed with the radiologist's interpretation of the x-ray and found that while there was "increased callus," it was not "bridging." (*Id.* at p. 24). That is, there was still a cleft in the fracture site. (*Id.*). At the time of the events in question, however, Defendants argue Dr. Coe was operating on the only information he had available at the time, which was the radiologist's report noting increased bridging. (*Id.*).

That's not true—Dr. Coe also "looked at the x-ray and decided that, you know, it's healing as one would expect." (Doc. 158-3 at p. 188). Dr. Coe testified that it is within his area of expertise to make medical judgments based on x-rays and that he has "good experience" in that area. (*Id.* at p. 189). Accordingly, this is not a basis to exclude Dr.

Lamberti's opinions. Dr. Lamberti's testimony is based on his application of reliable principle and methods, and Defendants can rely on "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" to attack Dr. Lamberti's opinions. *Daubert*, 509 U.S. 579 at 596.

Defendants also refer to Dr. Lamberti's admission that he was incorrect when he stated that Dr. Coe discontinued all treatment of Hernandez's fractured arm in July 2015. After acknowledging that Dr. Coe provided pain medication to Hernandez after July 2015, Dr. Lamberti agreed to clarify his report to indicate that Dr. Coe's decision to discontinue treatment of Hernandez's arm after August 4, 2015, was not based on medical judgment. (Doc. 156-1 at p. 27). Dr. Lamberti's clarification of this date, however, is not a sufficient reason to exclude his opinion.

Finally, Defendants claim Dr. Lamberti did not have a complete record before reaching his conclusions, his opinions are unsupported, and he provided insufficient data to substantiate a reliable opinion. Essentially, they argue, Dr. Lamberti provided merely an *ipse dixit* or "bottom-line" conclusion. *See Wendler & Ezra, P.C. v. Am. Int'l Grp., Inc.*, 521 F.3d 790, 791 (7th Cir. 2008) ("We have said over and over that an expert's *ipse dixit* is inadmissible. An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.").

The Court disagrees. Dr. Lamberti testified that he sought and reviewed all Hernandez's medical records that were provided to him, and he relied on the deposition testimony of Hernandez and Dr. Coe and his years of medical experience and judgment in forming his opinions. (Doc. 162-1; Doc. 156-1 at p. 14). True, there was one set of

medical records Dr. Lamberti did not receive from a hospital Hernandez visited on the day of his release from prison. Dr. Lamberti agreed these records, in which there is no documented complaint of left forearm pain, would have been relevant to his analysis. (Doc. 156-1 at p. 13). Nevertheless, Dr. Lamberti testified the records would not have changed his opinion because he had an x-ray of Hernandez's arm showing it was still broken after he was released from Lawrence. (*Id.*).

Dr. Lamberti clearly is qualified by reason of his knowledge, skill, experience, and training to opine on Dr. Coe's treatment of Hernandez's fractured ulna. Furthermore, his testimony will help the jury to understand the evidence, is based on sufficient facts and data, it is the product of reliable principles, and he reliably applied those principles to the facts of this case. For these reasons, the Court finds that Dr. Lamberti's expert testimony is both relevant and reliable, and the motion to exclude his testimony is denied.

**B.     Rachna Soriano, D.O.**

Dr. Rachna Soriano is an attending physician at the Shirley Ryan Ability Lab in Chicago, Illinois, and an Assistant Professor of Physical Medicine and Rehabilitation who specializes in amputation and wound care. (Doc. 162-3). She has been practicing medicine for over 18 years, is a Certified Wound Specialist, and is Board Certified in Physical Medicine and Rehabilitation. (*Id.*). Dr. Soriano completed her residency in Physical Medicine and Rehabilitation at the Northwestern Feinberg School of Medicine, and she earned her medical degree from the Michigan State College of Osteopathic Medicine. (*Id.*). Dr. Soriano also has published academic papers on the treatment and management of pressure ulcers. (*Id.*).

Defendants do not contest Dr. Soriano's qualifications as an expert witness but argue her opinions are not reliable because the available data does not support her assertions. Specifically, Defendants claim Dr. Soriano discounted her own opinion that deficient medical care caused Hernandez to develop pressure ulcers when she was unable to provide any other reason for the healing of his pressure ulcers by the time he was released from Lawrence. In fact, Defendants assert, she testified that Hernandez went a year and a half at Lawrence with no signs of a developing pressure ulcer, which demonstrates adequate medical care. They also take issue with her opinion that Dr. Coe inaccurately described a pressure ulcer on Hernandez's left buttock as an abrasion, when she later agreed in her deposition that she and Dr. Coe could call the same wound by two different names. (*Id.* at p. 17).

The Court disagrees with Defendants' representation of Dr. Soriano's testimony. Dr. Soriano did not admit that she and Dr. Coe simply disagreed on what word to use to describe Hernandez's pressure ulcer; she explained that an abrasion usually means that the patient "nicked something," while a stage one unblanching erythema implies the wound is caused by pressure. (*Id.*). And while she acknowledged that Hernandez received adequate medical care to prevent him from redeveloping a pressure sore on his left buttock, she noted that he did have issues with his right side. (*Id.* at p. 10). Dr. Soriano also testified that it is her opinion that Hernandez would not have developed a pressure ulcer on his left buttock if he had been turned and repositioned every two hours. (*Id.* at p. 13).

Defendants have failed to convince the Court that Dr. Soriano is unqualified or

that her opinions are unreliable. At most, Defendants have pointed to factual disputes on which Dr. Soriano holds expert opinions. Those opinions are subject to vigorous cross-examination at trial. *Daubert*, 509 U.S. 579 at 596.

## CONCLUSION

For these reasons, the Motion to Exclude Opinion Testimony of Defendants Coe and Allender filed by Plaintiff José Hernandez (Doc. 149) is **DENIED**. The Motion to Exclude Plaintiff's Expert Witnesses filed by Defendants Wexford Health Sources, Inc., John Coe, and Jon-Michael Allender (Doc. 155) is also **DENIED**.

**IT IS SO ORDERED.**

DATED: August 2, 2021

*[signature]*

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**